IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

JANELLE B. CARUANO,

    Plaintiff,

v.

BAYHEALTH MEDICAL CENTER, INC.,

    Defendant.

Civil Action No. 22-1284-RGA

MEMORANDUM OPINION

Gary E. Junge (argued), SCHMITTINGER & RODRIGUEZ, P.A., Dover, DE,

    Attorney for Plaintiff.

Stacy A. Scrivani, Alexis R. Gambale, STEVENS & LEE, P.C., Wilmington, DE; Lisa M. Scidurlo, STEVENS & LEE, P.C., King of Prussia, PA; Michael M. Greenfield (argued), Sasha A. Phillips, STEVENS & LEE, P.C., Philadelphia, PA; Theresa M. Zechman, STEVENS & LEE, P.C., Lancaster, PA,

    Attorneys for Defendant.

February ⎵, 2024



**ANDREWS, U.S. DISTRICT JUDGE:**

Before me is Defendant's Motion to Dismiss. (D.I. 23). I have considered the parties' briefing. (D.I. 24, 25, 27). I heard oral argument on January 4, 2024 on a group of cases, including the present action, involving religious discrimination claims with regards to Defendant's COVID-19 vaccine policy. (Hearing Tr.).[1] For the reasons set forth below, this motion is GRANTED in part and DISMISSED as moot in part.

## I. BACKGROUND

This case stems from the COVID-19 pandemic and a healthcare provider's efforts to respond to government vaccination policy. The Amended Complaint (D.I. 21) is the operative complaint and alleges the following facts.

On August 12, 2021, Governor John Carney ordered all Delaware state health care employees either to become vaccinated for the COVID-19 virus by September 30, 2021 or to submit to regular testing for the COVID-19 virus. In November 2021, the Centers for Medicare & Medicaid Services ("CMS") issued a COVID-19 vaccine mandate requiring certain health care facilities, including Defendant, to ensure their staff members were all either vaccinated against COVID-19 or had obtained medical or religious exemptions to taking the vaccine.

Pursuant to Defendant's vaccination policy, employees seeking religious exemption requests were required to submit forms explaining the religious beliefs that formed their basis of their objection to the COVID-19 vaccine. (*See* D.I. 21-1, Ex. A). Employees could attach additional materials, such as letters from religious leaders, to support their exemption request. (*Id.*).

---

[1] Citations to the transcript of the argument are in the format "Hearing Tr. at __."

Employees who had their religious exemption requests rejected, and continued to refuse the COVID-19 vaccine, were terminated on February 28, 2022. Plaintiff subsequently filed the present suit raising religious discrimination claims against Defendant under Title VII (Count I) and the Delaware Discrimination in Employment Act ("DDEA") (Count II). *See* 42 U.S.C. § 2000e; DEL. CODE ANN. tit. 19, § 711. Defendant moves to dismiss Plaintiff's claims pursuant to FED. R. CIV. P. 12(b)(6). (D.I. 23).

## II. LEGAL STANDARD

### A. Rule 12(b)(6)

Rule 8 requires a complainant to provide "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). Rule 12(b)(6) allows the accused party to bring a motion to dismiss the claim for failing to meet this standard. A Rule 12(b)(6) motion may be granted only if, accepting the well-pleaded allegations in the complaint as true and viewing them in the light most favorable to the complainant, a court concludes that those allegations "could not raise a claim of entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007).

The factual allegations do not have to be detailed, but they must provide more than labels, conclusions, or a "formulaic recitation" of the claim elements. *Id.* at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."). Moreover, there must be sufficient factual matter to state a facially plausible claim to relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The facial plausibility standard is satisfied when the complaint's factual content "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* ("Where a complaint pleads facts that are merely

3

consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." (internal quotation marks omitted)).

### B. Failure to Accommodate

Title VII makes it unlawful for an employer to discriminate against an employee based on that employee's religion. 42 U.S.C. § 2000e-2(a)(1). The statute defines "religion" to include "all aspects of religious observance and practice, as well as belief, unless an employer demonstrates that he is unable to reasonably accommodate to an employee's or prospective employee's religious observance or practice without undue hardship on the conduct of the employer's business." 42 U.S.C. § 2000e(j).

To establish a prima facie case of religious discrimination under Title VII based on a failure to accommodate theory, an employee must show that (1) the employee "held a sincere religious belief that conflicted with a job requirement," (2) the employee "informed their employer of the conflict," and (3) the employee was "disciplined for failing to comply with the conflicting requirement." *Fallon v. Mercy Cath. Med. Ctr. of Se. Pa.*, 877 F.3d 487, 490 (3d Cir. 2017). "Plaintiffs are not required to establish each element to survive a motion to dismiss; they must simply allege sufficient facts to raise a reasonable expectation that discovery will uncover proof of their claims." *Finkbeiner v. Geisinger Clinic*, 623 F. Supp. 3d 458, 465 (M.D. Pa. 2022) (citing *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 789 (3d Cir. 2016)).

A district court's inquiry into whether a plaintiff has plausibly plead the first prong of a prima facie religious discrimination claim is limited to determining whether the belief is (1) "sincerely held" and (2) religious within the plaintiff's "own scheme of things." *Welsh v. United States*, 398 U.S. 333, 339 (1970) (quoting *United States v. Seeger*, 380 U.S. 163, 185 (1965)).

4

With respect to the first prong of this inquiry, "[w]hether a belief is sincerely held is a question of fact." *Geerlings v. Tredyffrin/Easttown Sch. Dist.*, 2021 WL 4399672, at *6 (E.D. Pa. Sept. 27, 2021) (citing *Seeger*, 380 U.S. at 185).

With respect to the second prong, determining whether a plaintiff's beliefs are religious "presents a most delicate question." *Africa v. Pennsylvania*, 662 F.2d 1025, 1031 (3d Cir. 1981). "[I]t is nonetheless incumbent upon the court to ensure that the alleged beliefs are rooted in a plaintiff's religion and are entitled to the broad protections guaranteed thereunder." *Aliano v. Twp. of Maplewood*, 2023 WL 4398493, at *5 (D.N.J. July 7, 2023) (citing *Fallon*, 877 F.3d at 490). "The notion that all of life's activities can be cloaked with religious significance" cannot transform an otherwise secular idea into a religious belief. *Africa*, 662 F.2d at 1035. "[T]he very concept of ordered liberty" precludes allowing any individual "a blanket privilege 'to make his own standards on matters of conduct in which society as a whole has important interests.'" *Africa*, 662 F.2d at 1031 (quoting *Wisconsin v. Yoder*, 406 U.S. 205, 215–16 (1972)).

The Third Circuit has adopted the three *Africa* factors to differentiate between views that are "religious in nature" and those that are "essentially political, sociological, or philosophical." *Fallon*, 877 F.3d at 490–91 (quoting *Seeger*, 380 U.S. at 164); *Africa*, 662 F.2d at 1032. A judge must determine whether the beliefs in question (1) "address fundamental and ultimate questions having to do with deep and imponderable matters," (2) "are comprehensive in nature," and (3) "are accompanied by certain formal and external signs." *Fallon*, 877 F.3d at 491 (quoting *Africa*, 662 F.2d at 1032) (cleaned up).

The *Africa* court tackled the issue of analyzing non-traditional "religious" beliefs or practices by "look[ing] to familiar religions as models in order to ascertain, by comparison, whether the new set of ideas or beliefs is confronting the same concerns, or serving the same

5

purposes, as unquestioned and accepted 'religions.'" *Africa*, 662 F.2d at 1032 (quoting *Malnak v. Yogi*, 592 F.2d 197, 205 (3d Cir. 1979) (Adams, J., concurring)); *Fallon*, 877 F.3d at 491 (describing the process as considering "how a belief may occupy a place parallel to that filled by God in traditionally religious persons."). The *Africa* factors were adopted as "three 'useful indicia' to determine the existence of a religion" pursuant to this "definition by analogy" approach. *Africa*, 662 F.2d at 1032. Their applicability to a person who professes a more widely recognized, "traditional" religion is a little less obvious.[2] However, because individuals cannot "cloak" all personal beliefs "with religious significance," a court must still scrutinize whether a sincerely held belief, asserted by someone claiming a recognized religion, is sufficiently connected to their religion. *Id.* at 1035; *see Griffin v. Massachusetts Dep't of Revenue*, 2023 WL 4685942, at *5 (D. Mass. July 20, 2023) ("[T]he issue in this case is not whether plaintiff has asserted a plausible claim that she has a personal religious faith. . . . Plaintiff does not claim that she has suffered unlawful discrimination because she believes in God. Rather, she claims that she has suffered unlawful discrimination because she was required to comply with the COVID-19 vaccination requirement. The critical question, therefore, is whether the complaint alleges sufficient plausible facts from which it could be reasonably inferred that being vaccinated against COVID-19 violates a tenet or principle of her religious belief.").

Of course, individuals may have religious beliefs which are not widely accepted within their religion. *See Thomas v. Rev. Bd. of Ind. Emp. Sec. Div.*, 450 U.S. 707, 708 (1981) ("The guarantee of free exercise is not limited to beliefs which are shared by all of the members of a religious sect"); 29 C.F.R. § 1605.1 ("The fact that no religious group espouses such beliefs or

---

[2] Plaintiff follows a recognized religion that already meets the three *Africa* factors. (*See* D.I. 21 ¶ 13).

6

the fact that the religious group to which the individual professes to belong may not accept such belief will not determine whether the belief is a religious belief of the employee or prospective employee."). Beliefs of this nature would, logically, fail to be sufficiently linked to the individual's claimed religion and need to satisfy the *Africa* standard to qualify as religious beliefs.

"[The DDEA] prohibits employment discrimination in statutory language nearly identical to Title VII." *Spady v. Wesley Coll.*, 2010 WL 3907357, at *3 n. 4 (D. Del. Sept. 29, 2010); *see* DEL. CODE ANN. tit. 19, § 711(b). "[Courts] evaluate plaintiffs' DDEA claims under the same framework used to evaluate Title VII claims." *Spady*, 2010 WL 3907357, at *3 n. 4 (citing *Witcher v. Sodexho, Inc.*, 247 F. App'x 328, 329 n. 1 (3d Cir. 2007); *Hyland v. Smyrna Sch. Dist.*, 608 F. App'x 79, 83 n. 5 (3d Cir. 2015) (instructing that "the standards under Title VII and the DDEA are generally the same").

### C. Disparate Treatment

To establish a prima facie case of religious discrimination under Title VII based on a disparate treatment theory, an employee must show that (1) the employee is "a member of a protected class," (2) the employee "suffered an adverse employment action," and (3) "nonmembers of the protected class were treated more favorably." *Abramson v. William Paterson Coll. of N.J.*, 260 F.3d 265, 281–82 (3d Cir. 2001). Depending on whether the plaintiff proceeds under a pretext or mixed-motive theory, they must ultimately prove that their protected status was either a "motivating" or a "determinative" factor in the employer's challenged action. *Connelly*, 809 F.3d at 787–88.

## III. DISCUSSION

### A. Failure to Accommodate

At this stage of the case, only one issue exists—whether Plaintiff has sufficiently pled that the belief upon which her objection to receiving the COVID-19 vaccine was based is a religious belief. "[T]o adequately plead a 'religious belief,' a plaintiff must allege some facts regarding the nature of her belief system, as well as facts connecting her objection to that belief system." *Aliano*, 2023 WL 4398493, at *5. "In other words, she must demonstrate that her objection arises from a subjective belief that is tied to her belief system which meets the *Africa* factors." *Id.* (citing *Africa*, 662 F.2d at 1032; *Fallon*, 877 F.2d at 492–93 (concluding that the plaintiff's "anti-vaccination beliefs are not religious" but providing "[t]his is not to say that anti-vaccination beliefs cannot be part of a broader religious faith; in some circumstances, they can, and in those circumstances, they are protected")); *see also Brown v. Child.'s Hosp. of Phila.*, 794 F. App'x 226, 227 (3d Cir. 2020) ("[I]t is not sufficient merely to hold a 'sincere opposition to vaccination'; rather, the individual must show that the 'opposition to vaccination is a religious belief.'" (quoting *Fallon*, 877 F.3d at 490)); *Griffin v. Massachusetts Dep't of Revenue*, 2023 WL 4685942, at *5 (D. Mass. July 20, 2023); *Ellison v. Inova Health Care Servs.*, 2023 WL 6038016, at *6 (E.D. Va. Sept. 14, 2023) (A plaintiff should "provide[] sufficient allegations regarding [their] subjective personal beliefs, how those beliefs are related to [their] faith, and how those beliefs form the basis of [their] objection to the COVID-19 vaccination."). Defendant argues that Plaintiff's objection to the vaccine stems from Plaintiff's personal moral code rather than from her religious beliefs.[3] (D.I. 24 at 8–16; D.I. 27 at 5–8).

---

[3] Defendant does not challenge Plaintiff's assertion that her religious faith of non-denominational Christianity meets the *Africa* test. Rather, Defendant argues the beliefs on which Plaintiff's objection to the vaccine is based are secular beliefs based on Plaintiff's personal moral code, as

8

Plaintiff identifies three categories of beliefs which she argues qualify as religious beliefs. (*See* D.I. 30 at 5 (placing Plaintiff under the "Created in the Image of God," "Cannot change God Given Immune System/Healing Power rests with God," "Cannot Defile Body Because it is a Temple of the Holy Spirit" categories); D.I. 21 ¶ 19). For the following reasons, I find Plaintiff has failed to adequately plead facts that show any of these categories are religious beliefs that form the basis of her objection to the COVID-19 vaccine.

### 1. "Body is a Temple" Belief

Plaintiff's exemption request form states:

> Scripture states in 1 Corinthians 6:19–20 (NIV Bible) "Do you not know your bodies are temples of the Holy Spirit, who is in you, whom you have received from God? You are not your own; you were bought at a price. Therefore, honor God with your bodies." By the grace of God, my salvation was purchased through the crucifixion of Jesus Christ. It is right to honor God with my body since it is his temple, by controlling what I put into it after discernment with the Lord. 1 Corinthians 3:16–17 (NIV Bible) also states: "Don't you know that you yourselves are God's temple and that God's spirit dwells in our midst? If anyone destroys God's temple, God will destroy that person; for God's temple is sacred, and you together are that temple." 2 Corinthians 7:1 (NIV Bible) "Therefore, since we have these promises, dear friends, let us purify ourselves from everything that contaminates body and spirit, perfecting holiness out of reverence for God." This teaches that we should cleanse ourselves from every impurity of flesh and spirit.

(D.I. 21-1, Ex. A, at 3 of 4). Plaintiff fails to tie her "Body is a Temple" belief to her objection to the COVID-19 vaccine. She does not explain how her religious beliefs lead to the conclusion that the COVID-19 vaccine constitutes an "impurity."

Instead, Plaintiff argues she "cannot be compelled or shouldn't be forced to do something that goes against God's will." (*Id.*; *see id.* ("'Thy will be done,' God's will,

---

opposed to religious beliefs that form a part of Plaintiff's Christian faith. (*See* D.I. 24 at 8–16; D.I. 27 at 5–8). I therefore address only the questions at issue: whether Plaintiff has sufficiently connected her objection to the vaccine to a religious belief tied to her Christian faith or whether the beliefs that form the basis of Plaintiff's objection would otherwise satisfy the *Africa* standard.

9

not man's will or my will."); *id.* ("To be forced to do something that violates my beliefs is to sin against God.")). She states, "After careful discernment, prayerfully seeking God and reading Bible scripture, it is my sincere religious belief that the COVID-19 vaccine would be in direct opposition to God's power, authority, and will over my body, life and eternal soul." (*Id.*) Plaintiff asserts, "I cannot violate my Creator or conscience which has been given to me by God." (*Id.*). The letter Plaintiff submitted from her pastor similarly focuses on "the matter of conscience." (*See* D.I. 21-2, Ex. B, at 5 of 5 ("Christians are not of one mind on [the COVID-19 vaccine] issue. . . . The Apostle Paul, in his first letter to the church in Corinth (1 Corinthians 8–10), addresses the matter of conscience among individual Christians—that there are times when—without violating our Christianity, we may differ, and specifically on *things taken into the body*.")).

Allowing Plaintiff the ability to object to anything that "goes against God's will" or her "conscience" would amount to the type of "blanket privilege" that does not qualify as religious belief under *Africa*. *See Africa*, 662 F.2d at 1031. "'[T]he very concept of ordered liberty precludes allowing' [Plaintiff], or any other person, a blanket privilege 'to make his own standards on matters of conduct in which society as a whole has important interests.'" *Id.* (citing *Yoder*, 406 U.S. at 215–16). Several other district courts handling similar religious discrimination cases involving the COVID-19 vaccine have similarly found such beliefs to amount to "blanket privileges" that do not qualify as religious beliefs. *See, e.g., Lucky v. Landmark Med. of Mich., P.C.*, 2023 WL 7095085, at *4–7 (E.D. Mich. Oct. 26, 2023); *Ellison*, 2023 WL 6038016, at *5; *Ulrich v. Lancaster Gen. Health*, 2023 WL 2939585, at *5 (E.D. Pa. Apr. 13, 2023); *Blackwell v. Lehigh Valley*

10

*Health Network*, 2023 WL 362392, at *8 (E.D. Pa. Jan. 23, 2023); *Finkbeiner*, 623 F. Supp. 3d at 465.

Plaintiff's counsel argued that whether a belief amounted to a "blanket privilege" presents an issue of sincerity that should be reserved for a jury. (Hearing Tr. at 33:3–14). The *Africa* court, however, indicated that a principal reason that courts engaged in the practice of making "uneasy differentiations" between religious and nonreligious beliefs was to prevent any individual from retaining a "blanket privilege 'to make his own standards on matters of conduct in which society as a whole has important interests.'" *See Africa*, 662 F.2d at 1031. I find it proper to consider this question when dealing with religiosity. As noted above, other district courts have likewise examined the "blanket privilege" question at the motion to dismiss stage.

### 2. "Image of God" Belief

Plaintiff's exemption form states:

> The Holy Scriptures state that we are made in the image of God. "So God created mankind in his own image, in the image of God he created them; male and female he created them." Genesis 1:27 (NIV Bible). We are to be image-bearers of God. "So shall we bear the image of the heavenly man." 1 Corinthians 15:49 (NIV Bible). One day, we will be called into account for all we do for all things done while on this earth, including what we do to our body. "So then, each of us will give an account of ourselves to God." Romans 14:12 (NIV Bible). "For we must all appear before the judgment seat of Christ, so that each of us may receive what is due us for the things done while in the body, whether good or bad." 2 Corinthians 5:10 (NIV Bible).

(D.I. 21-1, Ex. A, at 3 of 4) (cleaned up). Plaintiff fails to tie her "Image of God" belief to her objection to the COVID-19 vaccine. She does not explain how her religious beliefs lead to the conclusion that the COVID-19 vaccine constitutes doing something "bad" to her body. As discussed in the prior section, Plaintiff focuses on her beliefs that she "shouldn't be forced to do something that goes against God's will" and "cannot violate my Creator or conscience which has

11

been given to me by God." (*Id.*). Such beliefs amount to "blanket privileges" and do not qualify as religious beliefs under *Africa*. *See supra* Section III.A.1.

### 3. "God-given Immune System" Belief

Plaintiff states, "Although I have had vaccines in the past, I now know that they are a sin against the body because God made me with an immune system and I cannot do anything to alter it." (D.I. 21-1, Ex. A, at 3 of 4 (quoting Psalms 139:14 (NIV Bible) ("I am fearfully and wonderfully made."))). She continues, "The COVID-19 vaccine will alter or change my immune system given to me by God, and I cannot inject a substance to change my God-given immune system." (*Id.*). Plaintiff's exemption form, however, lacks any explanation of how altering one's immune system, even if it is "God-given," is prohibited by her religious beliefs.

Furthermore, Plaintiff's refusal to take the vaccine is grounded in her understanding about the negative physical effects the vaccine would have on her body (i.e. that the vaccine "will alter or change my immune system"). Her objection is therefore predicated fundamentally on her scientific and medical concerns with the vaccine. Plaintiff does "not articulate any religious belief that would prevent her from taking the vaccine if she believed it" would not affect her immune system. *Id.* Plaintiff's medical beliefs do not qualify as religious beliefs under *Africa*. Several other district courts handling similar religious discrimination cases involving the COVID-19 vaccine have also found such scientific and medical judgments do not qualify as religious beliefs. *See, e.g.*, *McKinley v. Princeton Univ.*, 2023 WL 8374486, at *4 (D.N.J. Dec. 1, 2023); *Ellison*, 2023 WL 6038016, at *5; *Winans v. Cox Auto, Inc.*, 2023 WL 2975872, at *4 (E.D. Pa. Apr. 17, 2023); *Ulrich*, 2023 WL 2939585, at *5; *Passarella*, 2023 WL 2455681, at *5–7; *Geerlings*, 2021 WL 4399672, at *7; *contra*, *Aliano*, 2023 WL 4398493, at *8–9.

At oral argument, Plaintiff's counsel took the position that medical judgments could qualify as religious beliefs. (*See* Hearing Tr. at 34:15–35:12 ("[I]f I believe [the vaccine] is going to cause long-term harm to my body, then my truly-held religious belief is that my body is a temple of the Holy Spirit, and I should put nothing in my body that's going to harm it. That's religious belief.")). Plaintiff's counsel effectively seeks to "cloak[] with religious significance" Plaintiff's scientific and medical beliefs about the potential detrimental effects of the vaccine. *Africa*, 662 F.2d at 1035. The Third Circuit has already rejected such a position. *Id.* (explaining "[t]he notion that all of life's activities can be cloaked with religious significance" cannot transform an otherwise secular idea into a religious belief).

For the reasons stated above, I find Plaintiff's Complaint does not plausibly allege that Plaintiff's objection to receiving the COVID-19 vaccine was based on a sincerely held religious belief. At oral argument, Plaintiff's counsel agreed that, in the event that I found a plaintiff had not adequately pled a religious belief, dismissal with prejudice was the proper path forward. (Hearing Tr. at 65:1–9). I will therefore dismiss Plaintiff's failure to accommodate claim with prejudice.

### B. Disparate Treatment

Defendant argues that Plaintiff has failed to sufficiently plead a religious discrimination claim under Title VII based on disparate treatment. (D.I. 24 at 16). Plaintiff states that she has not yet pled disparate treatment. (D.I. 25 at 20). I agree with Defendant that Plaintiff's assertion of "differential treatment" presents some confusion about whether a disparate treatment claim has been raised. (D.I. 27 at 9 n. 22). Nevertheless, since Plaintiff states she is not now pleading disparate treatment, I accept that she is not, and I will dismiss Defendant's argument as moot.

### C. Plaintiff's DDEA Claims

A federal court has supplemental jurisdiction over a state law claim when the claim "arise[s] out of a common nucleus of operative fact" with the claims over which the court has original jurisdiction. *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725 (1966); *see* 28 U.S.C. § 1367(a). A federal court "may decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction . . . ." 28 U.S.C. § 1367(c)(3). Given my disposition of Plaintiff's Title VII claims, I decline to exercise supplemental jurisdiction over Plaintiff's remaining DDEA claims. I will dismiss Plaintiff's claims under Count II without prejudice.

## IV. CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss (D.I. 23) is GRANTED in part and DISMISSED as moot in part.

An appropriate order will issue.